TEXTILE WORKERS PENSION FUND and John Agnello, Noel Beasley, Harold Bock, John Buck, James Brubaker, Brian Curtis, Louis D'Amico, Agnelo Decosta, George Degray, Bruce A. Dunton, Ralph Guerriero, William T. Lee, Richard A. MacFadyen, Mark Pitt, Bruce Raynor, Henry A. Scheyer, Jr., George W. Shuster, William A. Smetts, and Robert Standen, as Trustees of the Textile Workers Pension Fund, Plaintiffs,

v.

FINDLAY INDUSTRIES, INC., Defendant.

No. 97 Civ. 9277.

United States District Court, S.D. New York.

July 21, 1999.

Schulte Roth & Zabel, LLP, New York City, by Ronald E. Richman, Morton I. Lorge, for plaintiffs.

Peter G. Eikenberry, New York City, for defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This action was tried before me without a jury, and on March 26, 1999, I signed a Memorandum and Order, familiarity with which is presumed, finding for the defendant in all respects.

■ The Employee Retirement Income Security Act of 1974 (ERISA) provides for an award of attorneys' fees at the court's discretion. 29 U.S.C. § 1132(g)(1). The Second Circuit has a five-step test for assessing such a request: (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorneys' fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action sought to confer a common benefit on a group of pension plan participants. *Anita Foundations, Inc. v. ILG-WU Nat'l Retirement Fund,* 902 F.2d 185, 188 (2nd Cir.1990).

■ On such assessment I conclude that awarding fees to Findlay here is entirely appropriate. First, the core of the complaint flows from premises not supported by the record, and seem instead to be mere wishful thinking. Contrary to the complaint's paragraph 15, which states: "the Company failed to contribute to the Pension Fund for certain hours for which its employees received compensation, *in violation of the Agreements,*" Findlay's collective bargaining agreements did *not* state that contributions were to be made based on hours compensated, but rather specified instead that contributions would be based on "hours worked" or merely that Findlay would contribute a certain number of cents "per hour per employee," depending on the year of the agreement or the local involved. Furthermore, contrary to the complaint, the 1991–95 collective bargaining agreement between Findlay and Local 981, which changed the basis of contributions from "per hour per employee" to "per hours worked," *does* "reflect the actual agreement of Local 981 and the Company with respect to contributions to the Pension Fund" since that was the practice of Findlay since 1973 and the Fund knew of this practice.[1] Thus, I find that the Fund disregarded essential underlying facts of this lawsuit which clearly supported the defendant's position and made the Fund's position hardly tenable. To have proceeded to trial on these facts suggests bad faith in the assertion of this

---

1. The Fund clearly and misleadingly misuses the deposition testimony of Fran Mullins, the president of Local 981, when it asserts that "Ms. Mullins also testified that she had never thought about whether Findlay/Molded was supposed to contribute for vacation and holiday hours." Plaintiff's letter to the Court dated December 7, 1998, at page 2. In fact, Ms. Mullins testified the following:

    Q: Isn't that something that you would typically notice a change from one contract to the next?
    A: Yes, but in my mind it had always been per hours that we worked.
    ***
    Q: What about holiday hours?
    A: That's what I mean, holiday. I wouldn't—that's never come up. That's never even crossed my mind that we were to have pension paid on holiday hours.

    Q: Did it cross your mind whether you were supposed to have pension on vacation pay?
    A: No.
    Q: Through all the years?
    A: Correct.
    ***
    Q: You testified previously that your understanding was that the company contributed based on hours worked; is that correct?
    A: It was my own personal understanding.
    ***
    A: Obviously, it would have been more money. You know, the contract always says per hour, per hour worked or per hour. That's why I always thought it was when you worked.
    Mullins Dep. at pp. 41–44.

**388**

claim.[2] This satisfies both the first and fourth factors of the test, as I obviously also conclude that the defendant's position here is the meritorious one.

The second factor, whether the Fund has the ability to satisfy an award of attorneys' fees to Findlay is not contested by the Fund. The third factor, whether such an award would deter other persons from acting similarly, also weighs in favor of awarding fees to Findlay.

The fifth and last factor in isolation appears in favor of the Fund, simply by way of establishing a preference in favor of greater contributions, but I find that in light of all the other factors, which are overwhelmingly in favor of Findlay, this does not prevent me from awarding fees here. While Fund managers and union representatives should pursue, through the collective bargaining process, the greatest amount of benefits that can be obtained for plan participants, here, the Fund shirked its responsibilities and tried to cover up and compensate for that failure by bringing this lawsuit. I refuse to shift responsibility for that failure to Findlay, who incurred considerable expense in defending this meritless claim.

Based on the forgoing, and pursuant to 29 U.S.C. § 1132(g)(1), I award attorneys fees and expenses to Findlay. On the record before me I am unable to determine the amount to be awarded, therefore the parties are urged to resolve this between them, if possible. Failing that, however, either party may notify me and following appropriate submissions, I will conduct a hearing.

So ordered.

---

**2.** What is it other than bad faith for the Fund's manager Rust to order the Fund's independent accountant to disregard the accountant's own conclusions on the various contract interpretations, which were immediately resolvable in Findlay's favor by looking at the parties performance under the contracts over many years.